**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| WENDY CHACON, on behalf of herself and all other similar situated,<br>　　　　　　Plaintiff,<br>　　v.<br><br>KOVITZ SHIFRIN NESBIT, an Illinois Professional Corporation,<br>　　　　　　Defendant. | Case No. 1:17-CV-2766<br><br>Presiding Judge Robert M. Dow Jr.<br><br>Magistrate Judge M. David Weisman |

**AMENDED CLASS ACTION COMPLAINT**

Plaintiff WENDY CHACON ("Chacon"), by and through her attorney, Kenneth M. DucDuong of KMD Law Office, and for her Complaint against Defendant KOVITZ SHIFRIN NESBIT, P.C. ("Kovitz") to obtain damages, costs of suit, and other suitable relief from Defendant, for its violations of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. §1692 *et seq.*, states and alleges as follows:

**JURISDICTION AND VENUE**

1.　　This court has original jurisdiction in this action by virtue of 28 U.S.C. §1331 because the matter in dispute involves a federal law arising under the FDCPA, 15 U.S.C. §1692(k).

2.　　Venue is proper in this District under 28 U.S.C. §1391(b) because the allegations herein relate to Defendant's transactions in this District, and its infliction of tortious injury on Plaintiff in the State of Illinois.

3.　　Defendant is located or conducts business with consumers like Plaintiff in this District.

**PARTIES**

- 1 -

4.      Plaintiff is a resident of the state of Illinois and resides in Illinois.

5.      Plaintiff is a "consumer" under the FDCPA.

6.      The alleged debt that Kovitz attempted to collect from Plaintiff is a consumer debt because it arose from the homeowner's assessment of Plaintiff's residence and therefore the debt are for her  personal, household or family purposes as that term is defined under §1692a(5) of the FDCPA.

7.      Kovitz is a professional corporation, a debt collection law firm, and is incorporated under the laws of Illinois. Kovitz maintains its principal office at 175 N. Archer Ave., Mundelein, IL 60060.

8.      Kovitz regularly engages in the business of collection of debts, purportedly owed to third parties by consumers through correspondence and phone calls.

9.      At all times relevant in this Action, Kovitz is deemed a "debt collector" as that term is defined under §1692a(6) of the FDCPA.

## INTRODUCTION

10.      Kovitz is a law firm that billed itself as "The Condo Law Firm." In fact, their practice largely consists of nothing more than preying upon unsuspecting consumer homeowners, conjuring up nonexistent issues, and then attempting to extort monies that benefit no one but themselves through payments of their lawsuits.

11.      Kovitz and its attorneys advertise on its website that it help "establishing an aggressive and effective collections policy for your association."

12.      Property Specialist, Inc. ("PSI") is a property manager of Plaintiff's Marquette's Landing Homeowners Association (the "Association").

13.      This action challenges the illegal and grossly unfair and egregious collection

practices of Kovitz.

14.     Kovitz's collection scheme is essentially parasitic: It takes over the delinquent accounts of individual members of homeowner's associations and then extorts unconscionable fees from delinquent homeowners – for its own fees that the homeowners do not owe.

15.     Kovitz gains control of homeowner accounts by offering collection services and requires the homeowners or condominium associations stop communicating with the homeowners and cede control and oversight over the delinquent accounts to Kovitz.

16.     Once Kovitz takes over an account, it gouges the homeowners by piling on fees upon fees and other charges that often exceed many times the amount of the delinquency while refusing to allow homeowners to pay their actual assessment amount without first paying Kovitz its own fees.

17.     In many cases where homeowners offered to pay Kovitz excessive "legal fees and costs," Kovitz would still refuse payment and instead proceed to file a forcible lawsuit anyway. This is because once Kovitz files a forcible lawsuit against homeowners, it would be able to "earn" even more attorney's fees. In short, these forcible lawsuits are Kovitz-driven forcible lawsuits for the sole financial benefits of Kovitz at the expense of homeowners.

18.     Through these practices, which are similar to a payday loan agency charging exorbitant interest rates and other junk charges well in excess of the value of a small loan, Kovitz puts financially distressed and vulnerable homeowners in a spiral of debt from which they cannot escape.

19.     Plaintiff's experience is a prime and typical example of Kovitz's egregious

collection practices.

20.     In January of 2017, PSI mailed Plaintiff a monthly statement demanding payment of $146.62. (*See* Exhibit 1).

21.     Plaintiff promptly paid $146.62, the allegedly delinquent assessments and late charges, as shown in Exhibit 1, but her payment was returned to her at Kovitz's instructions. More specifically, PSI sent Plaintiff a letter dated February 9, 2017, specifically stating, "since your account is in collections, the association's attorney [here Kovitz] requested that your check be returned to you." (*See* Exhibit 2 for a true and correct copy of PSI's February 9, 2017 Letter).

22.     When Plaintiff attempted to make payment, again, the second time in March of 2017, Kovitz promptly rejected it, demanded immediate payment, and the very next day, prepared and filed a forcible entry and detainer lawsuit against Plaintiff, claiming that she had "refused" to make payments.

23.     Like a stock broker who repeatedly churns her client accounts in order to generate her own commission fees, the real reason that Kovitz was quick to file forcible entry and detainer lawsuits is grounded in a simple economics: The quicker it files forcible entry and detainer lawsuits, the quicker the turnover of its fees, and the more profit per delinquent account it can generate.

24.     Unlike a typical collection lawsuit of a delinquent credit card account, however, a forcible entry and detainer lawsuit with the available remedy of a sheriff's eviction of homeowners out of their own homes exacts an inexorable and powerful pressure on homeowner defendants, often leaving them no alternative but submitting to Kovitz's unreasonable demand.

25.     It is a basic principle that a creditor or debt collector cannot demand payment of penalties or fees from a debtor without a legal basis – whether under contract or statute – for doing so.

26.     Homeowner's associations often have a financial incentive to comparison shop for a reasonably priced debt collection service. Kovitz upends this economic scheme by offering homeowners and condominium associations "free" collection services and then directly charging captive homeowners whatever fees it sees fit.

27.     As a result of Kovitz's conduct alleged herein, Kovitz has reaped significant profits, and Plaintiff and the members of the class have suffered damages.

28.     Plaintiff, on behalf of herself and the class, seeks damages from Kovitz and put an end to Kovitz's predatory collection practices.

**CLASS ALLEGATIONS**

29.     Plaintiff brings this lawsuit on behalf of herself and all other persons similarly situated under Rules 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

30.     Beginning at least as early as in 1983 or thereabout, the exact date and year being unknown to Plaintiff, and continuing to the present, Kovitz represents hundreds and thousands of homeowners and condominium associations like Plaintiff's Association.

31.     As part of Kovitz's debt collection practice, Defendant regularly sends consumers' form collection letters, by telephone calls and e-mail, which violated the Act.

32.     This action is brought and may properly be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

33.     This action satisfies the numerosity, predominance, typicality, adequacy,

and/or superiority requirements of those provisions. Plaintiff does not know the exact size of the class. Such information is in Kovitz's possession due to the nature of the trade and business involved, and the fact that Kovitz regularly represented creditors and condominium and homeowner associations.

34.     Common questions of law and fact exist as to all members of the class and predominate over any questions affecting individual members of the class, including Plaintiff, including but not limited to:

    a.  Whether Kovitz's form Collection Letters violated §§1692g, 1692e, and 1692f of the FDCPA;

    b.  Whether Kovitz's boiler-plate collection lawsuit violated §§1692f and 1692e of the FDCPA; and

    c.  Whether Kovitz's standard debt collection practice generally violated the FDCPA.

35.     There are four classes – Class A, B, C and D, as defined as follows. Members of Class A, B, and C Plaintiffs may fall within either one or all three class, as defined as follows:

    a.  Class A Plaintiffs (1) are individuals who received debt collection letters substantially similar to Plaintiff's Collection Letter #1 at their Illinois residences, (2) related to the alleged consumer debts that Kovitz collected or attempted to collect, (3) between September 17, 2016 and April 12, 2017, (4) with realistic facsimile signatures, and (5) which were intended to give Plaintiffs the false impression that the debt collection letters were written, with "meaningful involvement," by attorneys at Kovitz.

    b.  Class B Plaintiffs are (1) individuals who received debt collection letters

substantially similar to Plaintiff's Collection Letter #1 at their Illinois residences, (2) related to the alleged consumer debts that Kovitz collected or attempted to collect, (3) between September 17, 2016 and April 12, 2017, (4) whose associations are governed by the Illinois Common Interest Community Association Act, 765 ILCS 160/1 *et seq.*, (5) with realistic facsimile signatures, and (6) which were intended to give the false impression that the debt collection letters were written, with "meaningful involvement," by attorneys at Kovitz.

c.  Class C Plaintiffs are (1) individuals who were sued by Kovitz in Illinois state courts pursuant to Illinois Forcible Entry and Detainer Act, 735 ILCS 5/9-101 *et seq.*, (2) whose form forcible lawsuits contained a heading "Complaint For Possession of Common Interest Unit and Judgment for Assessment", (3) with substantially similar or identical allegations as those allegations contained in Plaintiff's State Action, and (4) whose forcible lawsuits were filed in Illinois state court between September 16, 2016 and April 12, 2017.

d.  Class D Plaintiffs are (1) individuals who received debt collection letters that are substantially similar to Collection Letter #2 at their Illinois residences, (2) related to the alleged consumer debts that Kovitz collected or attempted to collect, and (3) between January 25, 2016 and January 24, 2017.

## FACTS

36.  On January 25, 2017, Plaintiff is a unit owner who owns a residential unit property within the Association.

37.  The Association is formed under or governed by the Illinois Common Interest

Community Association Act (the "CICAA"), 765 ILCS 160/1 *et seq.*

38.     Kovitz and its attorney, Katharine W. Griffith, helped draft the Association's

2016 Amended Declarations and Bylaws (the "2016 Declaration") and then recorded it in

the Will County Recorder's Office on December 16, 2016, as Document Number

R201601639.

39.     Thus, Kovitz had intimate familiarity with or knowledge of the provisions of

the Association's 2016 Amended Declarations, Bylaws, and Rules and Regulations.

40.     Section 6.1 of the Association's 2016 Amended Declarations states, in

pertinent part:

> 6.1 <u>Delinquency</u>. Any assessment provided for in this Declaration which is
> not paid when due, shall be delinquent. With respect to each assessment not
> paid within fifteen (15) days after its due date, the Association may, at its
> election, require the Owner to pay a "late charge" in a sum to be determined
> by the Association and applied uniformly. If any such assessment is not paid
> within thirty (30) days after the delinquency date, the assessment shall bear
> interest from the date of delinquency at the highest rate permitted by Illinois
> law, and the Association may, at its option, bring an action at law against the
> Owner personally obligated to pay the same, or foreclose the lien (provided
> for in Section 5.1 hereof) against the Lot, and there shall be added to the
> amount of such assessment the late charge, the costs of preparing and filing a
> Complaint and such action and reasonable attorney's fees, and in the event a
> judgment is obtained, such judgment shall include interest together with the
> costs of bringing the action.

41.     On information and belief, the Association failed to obtain the required

consent of at least 67 percent of the membership vote for the amendment, as required

pursuant to section 19.3 of Article 19 of the 1999 Declaration of Covenants, Conditions,

Easements and Restrictions for Marquette's Landing Homeowner's Association (the "1999

Declaration"). The 1999 Declaration was recorded in Will County Recorder of Deeds Office,

as Document Number R1999085115. Thus, the 2016 Declaration has no legal force or

effect.

42.     Kovitz knows or should know that the Association never obtained, or failed to obtain, the required membership vote of at least 67 percent from the unit owners in order to amend the 1999 Declaration because the Association never provided Kovitz document(s) indicating that it had obtained the required 67 percent consent from the unit owners.

43.     On or about January 25, 2017, Kovitz mailed Plaintiff an initial "Notice and Demand" letter (the "Collection Letter #1") demanding payment of $221.61 "for your proportionate share of the expenses of administration, maintenance and repairs of the common elements/areas and other expenses lawfully agreed upon due and owing for the period November 1, 2016 to January 26, 2017" plus $321.92 "in legal fees and costs" for a total of $543.54. (*See* Exhibit 3, a true and correct copy of the January 25, 2017 letter).

44.     Kovitz relied upon the 2016 Declaration when it mailed Plaintiff the Collection Letter #1.

45.     The Collection Letter #1 is a form collection letter that Kovitz used for hundreds and thousands of allegedly delinquent accounts.

46.     On information and belief, Plaintiff's assessment account, as demanded in the Collection Letter #1, was assigned to Adam K. Bailey.

47.     At all times relevant to this action, Mr. Bailey was a non-attorney and was employed by Kovitz as a "legal assistant."

48.     One of the aliases that Kovitz's non-attorney employees regularly signed debt collection letters by affixing realistic facsimile signatures of attorney Ronald Kapustka and other KSN attorneys when KSN wants  to convey the impression to the recipients that the debt collection letters and other communications were mailed by them and written, with

- 9 -

"meaningful involvement," from Kovitz attorneys.

49.     Ronald Kapustka, an attorney at Kovitz, has been identified on Kovitz's website, as an attorney who "currently serve as the firm's lead Association collection attorney, helping associations establish and enforce aggressive collections policies." https://www.ksnlaw.com/ronald-j.-kapustka (last access on January 24, 2018).

50.     On information and belief, the signatures on Collection Letter #1 were realistic facsimile signatures. More specifically,

      a.     The signature of Ronald Kapustka on Collection Letter #1 is a realistic facsimile signature of Ronald Kapustka, which was affixed by a non-attorney.

      b.     The signature of one "Z. Delova" on Collection Letter #1 is a realistic facsimile of Z. Delova, who was an employee of Kovitz and whose signature was affixed not by Z. Delova but by one of Kovitz employees.

      c.     The notary signature of Jenny Dyer-Mortimer on Collection letter #1 is a realistic facsimile signature of Jenny Dyer-Mortimer, who was an employee of Kovitz and whose facsimile signature was affixed not by Jenny Dyer-Mortimer but by one of Kovitz employees.

51.     The Association had no governing documents that authorize charging a $15 late fee for unpaid assessment.

52.     On or about March 31, 2016, the Association purportedly adopted a collection policy titled "Resolution to Adopt Collection of Delinquent Assessment Policy" (the "2016 Collection Resolution").

53.     Kovitz prepared and drafted the 2016 Collection Resolution. The provision— attorney's fees will not be waived by Association— in the 2016 Collection Resolution,

which was prepared and drafted by Kovitz, was for the sole purpose of financially benefiting Kovitz.

54.     Prior to March 31, 2016, the Association had no collection policy, including but not limited to, charging a late fee for allegedly delinquent assessment payment.

55.     The Association's 2016 Collection Resolution was invalid.

56.     Plaintiff disputed the amount demanded in the Collection Letter, including late charges and other charges.

57.     Nevertheless, in January, 2017, Plaintiff made two payments—one check in the amount of $98.96 and the other check in the amount of $47.66—for a total of $146.62.

58.     The Association's January 2017 monthly statement shows a total balance of $146.62. (*See* Exhibit 1 *supra*.)

59.     Plaintiff's payments of $146.62 represent the full payment of Plaintiff's assessment *including* the disputed late fees as indicated in Exhibit 1.

60.     The Association received Plaintiff's payments of $146.62 shortly thereafter.

61.     Kovitz never contacted, and received authorization from, the Association before instructing PSI to reject Plaintiff's payment. (*See* Exhibit 2 *supra*).

62.     Kovitz and PSI were working together as mutual agents in a joint enterprise to accomplish the same goal—each earning its respective "fees" from unit owners—while their real clients, the associations, were left in a dark and were not consulted in any meaningful way. For example, as alleged *infra*, and this Court should take judicial notice or court papers and orders filed in the State Action and a related case, after the state court dismissed the State Action with prejudice on April 27, 2017, Kovitz and its attorneys knew or should have known that it could no longer file a second forcible action against Plaintiff

nor could it seek to collect the same assessment amount and other charges, as demanded in the State Action. Nevertheless, Kovitz instructed, on information and belief, PSI to send Plaintiff a collection letter dated June 1, 2017 to collect or attempt to collect assessments and other charges already adjudicated in the State Action. (*See* Exhibit 4 for the true and correct copy of the June 1, 2017 collection letter).

63.     When Plaintiff complained of the excessive fees and costs in Collection Letter #1, Kovitz, through its legal assistant, Adam K. Bailey, responded in an e-mail dated February 21, 2017 and claimed that the $321.92 amount in "fees and costs," as demanded in the Collection Letter #1, is a uniform fee, purportedly consisted of:

> $185.50 – Preparation of Notice and Demand [of the form Collection Letter]
>
> $77.00 – Tract Book Search
>
> $53.00 – Bankruptcy Search
>
> $6.42 – Postage

64.     With the exception of the charge for postage, i.e., the $6.42 as alleged in paragraph 63, the amount of $321.92 in "legal fees and costs" in the Collection Letter #1 was a flat rate amount.

65.     During all times relevant to this action, Kovitz used PACER, a Public Access to Court Electronic Records Service, for bankruptcy search.

66.     PACER charges $0.10 per page and caps the charge at $3.00 if the document searched is more than 30 pages. (*See* http://www.uscourts.gov/services-forms/fees/electronic-public-access-fee-schedule, last access on January 24, 2018).

67.     On information and belief, Kovitz was charged by PACER $0.10 on January 25, 2017 when it allegedly performed a bankruptcy search on Plaintiff using PACER.

68.     Kovitz did not pay a third party vendor $53.00 when it performed, using PACER, a bankruptcy search on Plaintiff.

69.     During all times relevant to this action, Kovitz used a third party service provider for a tract book search.

70.     Kovitz paid a flat monthly fee to a third party service provider for unlimited tract book search.

71.     Kovitz did not pay a third party vendor $77.00 when it allegedly performed a tract book search on Plaintiff.

72.     Nevertheless, in its petitions for attorney's fees and costs in forcible lawsuits that Kovitz filed in state court, Kovitz regularly misrepresented and misled state courts that the charge of $77.00 for "tract book search" and of $53 for "bankruptcy search" were costs.

73.     On or about March 3, 2017, Plaintiff, through her attorney, Kenneth M. DucDuong, sent a letter (the "March 3, 2017 Letter") to Kovitz and enclosed a check in the amount of $186.62 for her alleged overdue homeowner's assessments and charges while disputing other charges. (*See* Exhibit 5 for true and correct copy of March 3, 2017 letter)

74.     The United States Postal Service (the "USPS") delivered the March 3, 2017 Letter in an envelope, which Kovitz received at its office located at 175 North Archer, Mundelein, IL 60060.

75.     In the March 3, 2017 Letter, Exhibit 5, Kovitz was advised that Plaintiff was represented by legal counsel.

76.     Despite its knowledge that Plaintiff was represented by legal counsel, on March 8, 2017, Kovitz communicated *directly* to Plaintiff by e-mail and informed her that it rejected Plaintiff's payment of $186.62. (*See* Exhibit 6)

- 13 -

77.     Despite its knowledge that Plaintiff was represented by legal counsel, Kovitz then sent a letter ("Collection Letter #2") returning Plaintiff's $186.62 check, again, *directly* to Plaintiff, and demanded, "We must receive payment ***in full* <u>immediately</u>**." (*See* Exhibit 7) (Bold/italics/underlines emphases in original).

78.     With the exception of information specific to a particular homeowner or the association, Collection Letter #2 is a form collection letter that Kovitz used, during all relevant times in this action, as a follow-up response when a homeowner like Plaintiff disputed the amount demanded in Collection Letter #1.

79.     On March 9, 2017, Kovitz prepared a forcible entry and detainer lawsuit against Plaintiff.

80.     On March 15, 2017, Kovitz filed a forcible entry and detainer lawsuit against Plaintiff in the Twelfth Judicial Circuit Court of Will County, captioned *Marquette's Landing Homeowners Association v. Wendy Chacon and all unknown occupants*, Case No. 2017 LM 597 (the "State Action"). (*See* Exhibit 8).

81.     The State Action was prepared and drafted by a non-attorney.

82.     The signature(s) on the State Action were realistic facsimile signature(s), which were affixed by one of the non-attorney employees at Kovitz.

83.     Kovitz never provided Plaintiff verification of the disputed debt.

84.     Consistent with its implementation of an aggressive collections policy, Kovitz had standard policies and collection practices of uniformly rejecting payments from consumer debtors like Plaintiff so that it can pile fees upon fees to enrich itself.

85.     Kovitz had standard policies and collection practices of not providing verification of a disputed debt.

- 14 -

86.     Kovitz failed to verify Plaintiff's disputed debt.

87.     Kovitz had standard policies and collection practices of charging a set of uniform or flat rate fees for all of its collection letters that are substantially similar to Collection Letter #1.

88.     As a result, in order to turn a profit, Kovitz had a strong financial incentive to file forcible lawsuits *en mass*, which are prepared and drafted by non-attorney employees using form templates merged with collection account data it received, without "meaningful involvement" of an attorney.

89.     Kovitz' unilateral rejection of Plaintiff's payment of $146.62 for her assessments (as of the end of January, 2017) and, again, her payment in the amount of $186.62 on March 8, 2017 was for the sole purpose of adding unfair and excessive attorney's fees and costs (in the State Action) so as to enrich itself.

## <u>COUNT I</u>
### VIOLATIONS OF §§1692g, 1692e, 1692f OF THE FDCPA WITH RESPECT TO COLLECTION LETTER #1

90.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 89 as if fully set forth in this paragraph.

91.     Count I is brought as a class action for Class A Plaintiffs.

92.     Under §1692g of the FDCPA, a collection letter must be effectively communicated, and may not be overshadowed, confounded, or eviscerated by other language or words as seen from the perspective of the reasonably unsophisticated consumer.

93.     Paragraph 4 of Collection Letter #1 states in part:

Payment should be **made payable to Marquette's Landing Homeowners Association** and sent to our law firm, Kovitz Shifrin Nesbit, 175 N. Archer

Avenue, Mundelein, IL 60060. Please reference our file # on your payment. *Only full payment of all amounts demanded in this notice will invalidate the demand, unless the person claiming possession, or his or her agent or attorney, agrees in writing to withdraw the demand in exchange for receiving partial payment.* (Italics emphasis added)

* * *

94.     Section 1-30(h) of the CICAA provides:

(h) Other than attorney's fees and court or arbitration costs, no fees pertaining to the collection of a member's or unit owner's financial obligation to the association, including fees charged by a manager or managing agent, shall be added to and deemed a part of a member's or unit owner's respective share of the common expenses unless: (i) the managing agent fees relate to the costs to collect common expenses for the association; (ii) the fees are set forth in a contract between the managing agent and the association; and (iii) the authority to add the management fees to a member's or unit owner's respective share of the common expenses is specifically stated in the declaration, bylaws, or operating agreement of the association.

735 ILCS 160/1-30(h).

95.     Section 9-104.1(b) of Illinois Code of Civil Procedure provides in full as

follows:

(b) In the case of a condominium unit, the demand is not invalidated by partial payment of amounts due if the payments do not, at the end of the notice period, total the amounts demanded in the notice for common expenses, unpaid fines, interest, late charges, reasonable attorney fees incurred prior to the initiation of any court action and costs of collection. The person claiming possession, or his or her agent or attorney, may, however, agree in writing to withdraw the demand in exchange for receiving partial payment. To prevent invalidation, the notice must prominently state:
    "Only FULL PAYMENT of all amounts demanded in this notice will invalidate the demand, unless the person claiming possession, or his or her agent or attorney, agrees in writing to withdraw the demand in exchange for receiving partial payment."

735 ILCs 5/9-104.1(b).

96.     Plaintiff's property, whose assessments were demanded in Collection Letter

#1, is not a condominium unit.

- 16 -

97.     The Collection Letter #1 fails to prominently state the "full payment" requirement under 735 ILCS 5/9-104.1(b).

98.     Further, Collection Letter #1 failed to properly explain the apparent conflict, including the fifth paragraph, which states "[f]ederal law give you thirty days ...," the second paragraph, which states "[o]ur law firm has been retained ...," and the sixth paragraph, which states "Federal law does not require our firm to wait until the end of the 30-day period before suing you to collect this debt. ...," and therefore overshadowed and failed to properly state the requirements of §1692g(a) and (b), in violation of the FDCPA.

99.     Section 1692g of the FDCPA provides that if a debtor disputes a debt, a debt collector must cease collection until it has verified the disputed debt.

100.    Kovitz's failure to verify Plaintiff's disputed debt before proceeding with further collection, as demanded in Collection Letter #2, including the filing the State Action on March 15, 2017, violated §1692g(b) of the FDCPA.

101.    Section 1692g(a) of the FDCPA requires a debt collect to properly state the amount of the debt.

102.    The Collection Letter #1's failure to properly state the amount, including itemization of the actual attorney's fees and costs, violated §1692g(a)(1) of the FDCPA.

103.    In short, Kovitz violated the FDCPA in the following manner:

   a.   Section 1692g(a)(1) for its failure to properly state the amounts, including itemization of attorney's fees and costs actually incurred;

   b.   Section 1692g(b) for its failure to properly verify the disputed debt and cease collection before verifying the debt;

   c.   Section 1692g—the "overshadowing claim"—for (1) demanding full

payment, (2) failing to prominently state the full payment requirement, and (3) failing to properly explain the conflict, Kovitz's Collection Letter confounded, overshadowed, eviscerated, and by incorrectly set forth the requirements under the Illinois Forcible Entry and Detainer Act, 735 ILCS 5/9-101 *et seq*. and the FDCPA, in violation of §§1692g, 1692e, and 1692f of the FDCPA; and

d. The general prohibition under sections 1692e and 1692f of the FDCPA for charging excessive and unreasonable amount for work not actually performed and for misrepresenting the actual expenses.

WHEREFORE, Plaintiff Wendy Chacon, on behalf of herself and all others similarly situated, respectfully prays that this Honorable Court enter a judgment in her favor, and against Defendant, Kovitz Shifrin Nesbit, P.C., as follows:

A. Certify the action to proceed as a class action as to Class A Plaintiffs;

B. For an award of statutory damages as permitted under §1692k(a)(2);

C. For reimbursement of her attorney fees and expenses pursuant to §1692k(a)(3); and

D. For such other or further relief as this Court deems just and equitable.

### **COUNT II**
FALSE REPRESENTATION THAT DEBT COLLECTION LETTERS SIMILAR TO COLLECTION LETTER #1 WERE SIGNED AND MAILED BY AN ATTORNEY IN VIOLATION OF §§1692e, 1692f, 1692j OF THE FDCPA

104. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 35, 36, 43, 45-50, as if fully set forth in this paragraph.

105. This count is a class action for Class B Plaintiffs.

106. Kovitz employed a staff of non-attorney employees who assisted with

- 18 -

collection and, on information and belief, allowed non-attorney employees to affix realistic facsimile signatures of attorneys at Kovitz on collection letters, in violation of

    a. §1692e(3) of the FDCPA, which prohibits the false representation or implication that an individual is an attorney or that a communication is from an attorney;

    b. §1692e(9) of the FDCPA, which prohibits the use of any written communication which creates a false impression as to its source, authorization, or approval;

    c. §1692j of the FDCPA, which makes it illegal to design, compile, or furnish any form knowing that the form would be used to create the false belief that the signer of the form is actually involved in the collection;

    d. §1692f of the FDCPA, which prohibits using unfair or unconscionable means to collect or attempt to collect any debt.

107.    Kovitz mailed the Collection Letter # 1 to Plaintiff on or about January 25, 2017, with false facsimile signatures to give the false impression that it was personally signed and mailed, with "meaningful involvement", one of the attorneys at Kovitz.

WHEREFORE, Plaintiff Wendy Chacon respectfully prays that this Honorable Court enter a judgment in her favor, and against Defendant, Kovitz Shifrin Nesbit, P.C., as follows:

A.   Certify this action to proceed as a class action as to Class B Plaintiffs;

B.   For an award of  actual and statutory damages as permitted under §1692k(a)(1) and (2);

C.   For reimbursement of her attorney fees and expenses pursuant to §1692k(a)(3); and

D.  For such other or further relief as this Court deems just and equitable.

## COUNT III
VIOLATIONS OF §§1692e, 1692e(2), (3), and (10), 1692f and 1692f(1) OF
THE FDCPA AS TO THE STATE ACTION

108.    Plaintiff re-alleges and incorporates by reference paragraphs 1-35, 36-37, 79-86, 88, 89, as if fully set forth in this paragraph.

109.    Count III is brought on a class wide basis with respect to the State Action.

110.    The board of directors of the Association never properly conducted a board meeting, with proper notice to the unit owners of the Association, authorizing the filing of the State Action. Thus, Kovitz never received authorization from the Association before filing the State Action.

111.    The Association is the plaintiff in the State Action.

112.    The FDCPA broadly applies to all consumer collection practices, including litigation activities of debt collectors in court. *See Heintz v. Jenkins*, 514 U.S. 291 (1995); *Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 2016 WL 4651403 (7th Cir. September 7, 2016) (collecting cases; holding and agreeing with the reasoning of sister circuits that "pleadings or filings in court can fall within the FDCPA").

113.    As part of its standard debt collection practices in which Kovitz routinely used form debt collection letters (similar to Plaintiff's Collection Letter #1 and #2), Kovitz routinely use form collection complaint templates (that are substantially similar to Plaintiff's State Action lawsuit) that were not subject to any meaningful review by any attorney, but instead were generated *en masse* by non-attorney employees at Kovitz, using word-processing templates and account data merged into those templates electronically to create finished documents.

- 20 -

114.  The State Action is a form collection complaint template that Kovitz used for hundreds and thousands of its forcible entry and detainer lawsuits it filed in the state of Illinois.

115.  Section 1692e provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> * * *
>
> (2) The false representation of—
>
>> (A) the character, amount, or legal status of any debt; or
>> (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt . . .
>
> (3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer …

15 U.S.C. §§1692e(2), (3), and (10).

116.  Section 1692f provides:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

15 U.S.C. §1692f.

117.  Section 1692h provides:

> If any consumer owes multiple debts and makes any single payment to any debt collector with respect to such debts, such debt collector may not apply such payment to any debt which is disputed by the consumer and, where applicable, shall apply such payment in accordance with the consumer's directions.

15 U.S.C. §1692h.

118.    In the State Action, Kovitz alleged in paragraph 7 in part as follows:

> 7.  Despite Plaintiff's demand upon defendants, defendants have failed and refused and continue to fail and refuse to pay to plaintiff the aforementioned amounts [itemized in paragraph 6]. . . .

(*See* Exhibit 7 para. 7)

119.    Kovitz knew that the allegations contained in paragraph 7 of the State Action were false or misleading because Plaintiff had attempted to pay twice but each time her payments were promptly rejected by Kovitz.

120.    In the State Action, Kovitz alleged in paragraph 9 as follows:

> 9.  Plaintiff has credited any and all payments received from defendants to the unpaid balance of defendants' account in accordance with Section 9-106.1 of the Illinois Code of Civil Procedure, 735 ILCS 5/9-106.1.

(*Id.* para. 9)

121.    Kovitz knew that the allegations contained in paragraph 9 of the State Action were false or misleading because it was Kovitz who instructed the Association to reject Plaintiff's payments.

122.    In the State Action, Kovitz alleged in paragraph 10 as follows:

> 10.  There is due to plaintiff from defendants, after deducting all payments made to date by said defendants, the sum of $1,390.28, plus costs, interest and attorney's fees.

(*Id.* para. 10).

123.    Kovitz knew that the allegations contained in paragraph 10 of the State Action were false or misleading because Kovitz instructed the Association to reject Plaintiff's payments.

124.    These allegations in paragraphs 7, 9, and 10 in the State Action were form allegations, without regard to specific facts of a particular case.

125.    The allegations in paragraphs 7, 9, and 10, among other allegations, in the

State Action, were boiler-plate or form allegations that Kovitz's non-attorney employees uniformly generated using word-processing templates for all of its collection (or forcible) lawsuits, without regard of individual facts of the particular case.

126.    The form allegations in paragraph 7, 9, and 10 in the State Action were misleading and false, designed to mislead and conceal the state court the fact that it was Kovitz's own unilateral decision to reject Plaintiff's payments, not Plaintiff's refusal to pay, thus giving a false impression that Plaintiff had refused to pay.

127.    Kovitz has a standard collection practice, in which its non-attorney employees unilaterally and uniformly rejected payments from consumer debtors like Plaintiff so as to allow it to pile up fees upon fees to enrich itself.

128.    Based on the above allegations, Kovitz

   a.   Violated §§1692h and 1692f of the FDCPA for its unilateral refusal to accept Plaintiff's payments in January, 2017 and again in March, 2017;

   b.   Violated the general prohibition against unfair or unconscionable debt collection practices under §§1692e, 1692e(2), (3), and (10), 1692f and 1692f(1) of the FDCPA.

WHEREFORE, Plaintiff Wendy Chacon, on behalf of herself and all others similarly situated, respectfully prays that this Honorable Court enter a judgment in her favor, and against Defendant, Kovitz Shifrin Nesbit, P.C., as follows:

   A.   Certify this action to proceed as a class action as to Class C Plaintiff;

   B.   For an award of statutory damages as permitted under §1692k(a)(2);

   C.   For reimbursement of her attorney fees and expenses pursuant to §1692k(a)(3); and

D.   For such other or further relief as this Court deems just and equitable.

**COUNT IV**
VIOLATION OF §§1692c(2) OF THE FDCPA FOR COMMUNICATING A
DEBTOR KNOWING THE DEBTOR IS REPRESENTED BY AN ATTORNEY

129.    Plaintiff re-alleges and incorporates by reference paragraphs 1-28, 36, 43,

73-77, as if fully set forth in this paragraph.

130.    Count IV is brought on an individual basis.

a.    Kovitz violated Section 1692c(2) of the FDCPA, which prohibits a debt

collector from communicating with the consumer directly without the prior

consent from the consumer debtor or the express permission of a court;

131.    Therefore, Kovitz's conduct violated the FDCPA.

WHEREFORE, Plaintiff Wendy Chacon respectfully prays that this Honorable Court

enter a judgment in her favor, and against Defendant, Kovitz Shifrin Nesbit, P.C., as follows:

A.   For an award of  actual and statutory damages as permitted under §1692k(a)(1)

and (2);

B.   For reimbursement of her attorney fees and expenses pursuant to §1692k(a)(3);

and

C.   For such other or further relief as this Court deems just and equitable.

**COUNT V**
VIOLATIONS OF §§1692g, 1692f OF THE FDCPA AS TO COLLECTION LETTER
#2

132.    Plaintiff re-alleges and incorporates by reference paragraphs 1-35, 36, 43,

45-50, 77-78, as if fully set forth in this paragraph.

133.    This count is brought as a class action for Class D Plaintiffs.

134.    Collection Letter #2 demanded from Plaintiff immediate full payment in the

amount of $558.54, a new debt or amount relative to $543.54, as demanded in Collection Letter #1.

135.    Collection Letter #2 is an initial collection letter demanding a new amount of $558.54.

136.    Collection Letter #2 violated the FDCPA in that:

    a.    It failed to properly state the "amount of the debt," in violation of §1692g(a)(1) of the FDCPA;

    b.    It failed to comply with the debt validation notice requirement under §1692g(a)(3), (4), and (5) of the FDCPA;

    c.    It failed to properly state the 30-day dispute validation notice as required under §1692g(b) of the FDCPA; and

    d.    Kovitz's standard debt collection practice violated §1692f's general prohibition against unfair conduct.

137.    Therefore, Kovitz's conduct violated the FDCPA.

WHEREFORE, Plaintiff Wendy Chacon respectfully prays that this Honorable Court enter a judgment in her favor, and against Defendant, Kovitz Shifrin Nesbit, P.C., as follows:

    A.    Certify this action as a class action as to Class D Plaintiff;

    B.    For an award of  actual and statutory damages as permitted under §1692k(a)(1) and (2);

    C.    For reimbursement of her attorney fees and expenses pursuant to §1692k(a)(3); and

    D.    For such other or further relief as this Court deems just and equitable.

Dated: January 24, 2018                                        Respectfully Submitted,

By: s/Kenneth M. DucDuong
Attorney for Plaintiff

*Counsel for Plaintiff*:

Kenneth M. DucDuong
KMD Law Office, Ltd.
4001 West Devon Avenue, Suite 332
Chicago, IL 60646
Tel.: 312.997.5959
Fax: 312.219.8404
E-Mail: kducduong@kmdlex.com

## **JURY DEMANDED**

Plaintiff demands trial by jury on all issues triable.

Respectfully Submitted,

By: *s/ Kenneth M. DucDuong*
Kenneth M. DucDuong
One of Plaintiff's Attorneys

*Counsel for Plaintiff*:

Kenneth M. DucDuong
KMD Law Office, Ltd.
4001 West Devon Avenue, Suite 332
Chicago, IL 60646
Tel.: 312.997.5959
E-Mail: kducduong@kmdlex.com

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take affirmative steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

By: *s/ Kenneth M. DucDuong*
Kenneth M. DucDuong
One of Plaintiff's Attorneys

## <u>ATTORNEY LIEN</u>

Plaintiff has assigned to her counsel as her attorney's lien all fees and costs
as permitted and assignable under the laws.

By: *s/ Kenneth M. DucDuong*
Kenneth M. DucDuong
One of Plaintiff's Attorneys

*Counsel for Plaintiff*:

Kenneth M. DucDuong
KMD Law Office, Ltd.
4001 West Devon Avenue, Suite 332
Chicago, IL 60646
Tel.: 312.997.5959
E-Mail: kducduong@kmdlex.com